FILED

OCT 20 2025

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

RECEIVED

OCT 20 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS — AUSTIN DIVISION

WILLIAM CHRISTOPHER NICKELS, §
Plaintiff, §

V. §

Civil Action No. 1:25 CV01696 ADA

IN MY PARENTS BASEMENT, INC. §
MATTHEW RYAN ACUFF §
JENNIFER WARD §
FIRE INSURANCE EXCHANGE (Farmers Insurance) §
EUGENE KRAFT §
AARON ALLISON §
TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION §
OFFICE OF INJURED EMPLOYEE COUNSEL §
CASSIE BROWN, Commissioner of Insurance (official capacity) §
DAN LABRUYERE, Deputy Commissioner (official and individual capacities) §
VIKKI UPTMORE, Quality Assurance Manager (official and individual capacities) §
NICOLE CROSLEN, Legal Counsel (official and individual capacities) §
DAVID DANIEL, Director of Field Operations, OIEC (official and individual capacities) §
ALEJANDRA HERNANDEZ, Regional Manager, OIEC (individual capacity) §
NANCY ALAQUINEZ, Ombudsman, OIEC (individual capacity) §
and other unknown co-conspirators §

Defendants.

PLAINTIFF'S COMPLAINT
(ADA Titles I, II, V; 42 U.S.C. §§ 1983, 1985(3); Civil RICO, 18 U.S.C. §§ 1961–1964)

Plaintiff William Christopher Nickels ("Plaintiff" or "Nickels") files this Complaint and alleges as follows:

## I. INTRODUCTION AND NATURE OF THE ACTION

1. This is a civil action for disability discrimination, retaliation, denial of due process and equal protection, and racketeering-related fraud arising from the wrongful denial of Plaintiff's rights in connection with his workplace injury and Texas workers' compensation claim.

2. Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA"). Following his injury on February 5, 2024, Defendants — including his employer, the insurer, state agencies and their officials, and associated counsel — engaged in coordinated conduct to deny benefits, retaliate against protected activity, obstruct ADA accommodations, and deprive Plaintiff of equal protection of the law.

3. Plaintiff asserts claims under: (a) ADA Title I (employment discrimination/retaliation), Title II (public services), and Title V (retaliation/interference), 42 U.S.C. § 12101 et seq.; (b) 42 U.S.C. § 1983 (Fourteenth Amendment due process/equal protection) and § 1985(3) (conspiracy to interfere with civil rights — pled in the alternative); and (c) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1964.

4. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages (where permitted), treble damages under RICO, and reasonable attorneys' fees and costs as allowed by law.

## II. JURISDICTION AND VENUE

5. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3), because Plaintiff's claims arise under the ADA, 42 U.S.C. §§ 1983 and 1985(3), and RICO, 18 U.S.C. §§ 1961–1964.

6. Civil RICO jurisdiction and remedies are authorized by 18 U.S.C. § 1964(c).

7. Venue is proper in the Western District of Texas, Austin Division, under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Williamson and Travis Counties, Texas; Defendant In My Parents Basement, Inc. ("IMPB") operates in Williamson County; and Defendants Texas Department of Insurance, Division of Workers' Compensation ("TDI-DWC") and the Office of Injured Employee Counsel ("OIEC") are located in Travis County. Several Defendants reside in or conduct business in this District and Division.

8. This Court may grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202; damages under 42 U.S.C. §§ 1983 and 1985(3) and 18 U.S.C. § 1964(c); and attorneys' fees under 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

## III. PARTIES

### A. Plaintiff

9. Plaintiff WILLIAM CHRISTOPHER NICKELS is a resident of Williamson County, Texas. He is a qualified individual with a disability and was employed by IMPB at the

time of his workplace injury.

## B. Private Defendants

10. IN MY PARENTS BASEMENT, INC. ("IMPB") is a Texas corporation with its principal place of business in Williamson County, Texas. It employed Plaintiff at the time of his February 5, 2024 injury. IMPB employed at least fifteen (15) individuals during the relevant period and is therefore a "covered employer" within the meaning of ADA Title I, 42 U.S.C. § 12111(5)(A).

11. During the relevant period, IMPB paid a substantial portion of its workforce in cash "under the table," and misclassified workers to evade statutory coverage thresholds and insurance costs. Plaintiff personally witnessed these practices and maintains a list of known employees who worked during the relevant period.

12. MATTHEW RYAN ACUFF is the owner and controlling decisionmaker of IMPB. He directly controlled Plaintiff's employment, accommodation decisions, and separation. He is sued in his individual capacity (including for conspiracy and RICO participation) and, for Title I purposes, as the employer's decisionmaker.

13. JENNIFER WARD is outside counsel for IMPB. She is sued in her individual capacity for participating in fraudulent denial and retaliation activities. Ward was retained after Plaintiff's termination in connection with settlement discussions and subsequent proceedings.

14. FIRE INSURANCE EXCHANGE ("Farmers Insurance") is an insurance carrier licensed in Texas that provided workers' compensation insurance for IMPB and processed Plaintiff's claim.

15. EUGENE KRAFT is counsel for Farmers Insurance. He is sued in his individual capacity for his role in the alleged fraudulent acts and conspiracy.

16. AARON ALLISON is Plaintiff's former workers' compensation attorney. He is sued in his individual capacity as a co-conspirator whose conduct aided the wrongful denial of Plaintiff's claim, including a post-BRC meeting with Ward and Kraft, followed by abandonment of representation before the DD decision challenge window closed.

## C. State Agency Defendants

17. TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION ("TDI-DWC") is a Texas state agency that administers the state workers' compensation system and is a "public entity" subject to Title II of the ADA, 42 U.S.C. § 12131(1).

18. OFFICE OF INJURED EMPLOYEE COUNSEL ("OIEC") is a Texas state agency that provides ombudsman services to injured workers and is a "public entity" subject to Title II of the ADA.

D. Individual State Officials and Employees

19. CASSIE BROWN is the Commissioner of Insurance and is sued in her official capacity.

20. DAN LABRUYERE is a Deputy Commissioner at TDI-DWC and is sued in his official and individual capacities.

21. VIKKI UPTMORE is TDI-DWC's Quality Assurance Manager and is sued in her official and individual capacities.

22. NICOLE CROSLEN is Legal Counsel for TDI-DWC and is sued in her official and individual capacities.

23. DAVID DANIEL is OIEC's Director of Field Operations and is sued in his official and individual capacities.

24. ALEJANDRA HERNANDEZ is a Regional Manager at OIEC and is sued in her official and individual capacities.

25. DIRK JOHNSON is an OIEC official and is sued in his official and individual capacities.

26. NANCY ALAQUINEZ is an OIEC Ombudsman assigned to Plaintiff and is sued in her official and individual capacities.

IV. FACTUAL BACKGROUND

27. On February 5, 2024, Plaintiff sustained a workplace injury to his left shoulder while employed by IMPB. He promptly reported the injury, sought medical attention, and remained under physician care.

28. Plaintiff's first treating doctor was **Dr. Eady**. Several months later, Plaintiff treated with **Dr. Ryan**; additional specialists (including Dr. Welsh, Dr. Martz, and Dr. Van Hall) became involved thereafter.

29. At all relevant times, IMPB employed fifteen (15) or more individuals. A substantial portion of these employees were paid in cash without payroll reporting. IMPB underreported its workforce to evade tax and insurance obligations and to avoid ADA coverage thresholds. Plaintiff can identify multiple coworkers from personal knowledge and contemporaneous records, and IMPB's own staff list corroborates the coverage threshold.

30. Shortly after the injury, Plaintiff was briefly permitted to return to **light-duty** tasks. However, IMPB — through owner **Ryan Acuff** — required Plaintiff to **work in a sling** that aggravated his injury and increased his pain.

31. When Plaintiff notified Acuff that the required sling was causing increased pain and impairing his ability to perform even light-duty tasks safely, **Acuff became angry and confrontational**.

32. On the third day of attempting to continue under these conditions, Plaintiff **called in** due to increased shoulder pain. In response, Acuff told Plaintiff he had spoken with the insurer and was instructed to tell Plaintiff that **"there is no light-duty work"** and that Plaintiff could not return until he was **"100% better."** (See Exhibit A, text messages reflecting this instruction.) This was false; **light-duty work existed** and had been provided days earlier. The "no light-duty" directive was a withdrawal of a reasonable accommodation.

33. **IMPB/Acuff's refusal** to continue light duty, combined with the "100% healed" requirement, constituted a failure to accommodate and retaliation under ADA Title I.

34. On **May 8, 2024,** Plaintiff was **terminated**. The **severance** and **termination** paperwork (see Exhibit B-3) cited Plaintiff's absence as "a burden on the company." Plaintiff did **not** sign the severance agreement.

35. Farmers Insurance initially acknowledged the claim. However, on **June 13, 2024,** more than sixty days after notice, **Laura Alvarado**, an adjuster for the insurer, **issued two conflicting PLN-11** notices of refusal to pay benefits, in violation of Tex. Lab. Code § 409.021(c). The untimely denials **waived the carrier's defenses** under Texas law.

36. Defendants manipulated the claim process by relying on **altered or incomplete medical records,** including **modified DWC-73 work-status forms.** Plaintiff's providers' restrictions were omitted, misrepresented, or ignored in materials shared with TDI-DWC. (See Exhibit F and related medical exhibits.)

37. On **July 30, 2024,** a TDI-DWC Administrative Law Judge conducted a **Contested Case Hearing (CCH).** Despite the statutory waiver and medical evidence, the ALJ denied Plaintiff's claim, relying on the carrier's submissions.

38. On **September 17, 2024,** the **Appeals Panel issued a "No Decision,"** which left the ALJ's ruling intact without substantive review. This **exhausted** Plaintiff's administrative remedies in the Texas workers' compensation system.

39. Throughout 2024–2025, Plaintiff submitted formal complaints and **ADA accommodation requests** to **TDI-DWC** and **OIEC**, and also contacted other oversight bodies. Plaintiff requested accommodations for participation in hearings and access to records; he also notified the agencies of procedural violations (including the PLN-11 timing waiver and altered medical records). Despite these notices, agencies failed to

provide effective accommodations or correct the procedural defects.

40. Plaintiff's assigned OIEC Ombudsman, **Nancy Alaquinez**, failed to advocate effectively or ensure due process. **Regional Manager Alejandra Hernandez, Director of Field Operations David Daniel**, and **OIEC official Dirk Johnson** were notified and did not intervene to correct the impairment of Plaintiff's rights.

41. **TDI-DWC officials** — including **Deputy Commissioner Dan Labruyere, Quality Assurance Manager Vikki Uptmore**, and **Legal Counsel Nicole Croslen** — acknowledged receipt of complaints but took **no meaningful corrective action**, despite notice of ADA access issues, altered records, and the carrier's statutory waiver.

42. **Jennifer Ward** (IMPB's counsel) was **retained after** Plaintiff's termination, during or after Plaintiff's labor-counsel settlement efforts. **Eugene Kraft** (insurer's counsel) actively coordinated positions and submissions with the carrier and employer. **Laura Alvarado** (carrier adjuster) sent and managed **PLN-11** notices and corresponded regarding **DWC-73** issues.

43. Plaintiff's former attorney **Aaron Allison** met with **Ward** and **Kraft** after Plaintiff's **BRC** and **before** the **DD** decision window; then ceased communications. Weeks later, after repeated attempts by Plaintiff to reach him to challenge the DD decision, Allison informed Plaintiff he had already **dropped representation** and that Plaintiff **could not fight** the case due to the DD decision — effectively abandoning Plaintiff at a critical juncture.

44. As a result of Defendants' actions and omissions, Plaintiff was **denied medical care and wage benefits** for an extended period. His condition **worsened**, and he suffered **physical pain, emotional distress**, and **severe financial hardship**.

45. Defendants' coordinated actions were not isolated mistakes, but part of a **pattern of conduct** aimed at (a) silencing Plaintiff's ADA-protected accommodation requests, (b) maintaining fraudulent denials of compensability and benefits, and (c) avoiding accountability through administrative inaction, delay, and procedural obstruction.

46. Plaintiff also has pre-existing **PTSD, generalized anxiety disorder**, and **asthma**. While Defendants were **not fully aware** of these conditions until **mid-2025** when Plaintiff was directly engaging with OIEC and TDI-DWC (the details were present in medical records), Defendants were on notice of Plaintiff's **work-related shoulder disability** and requests for accommodation from February 2024 onward.

47. Plaintiff remains without access to workers' compensation medical care or wage benefits due to these ongoing violations.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

48. Plaintiff timely exhausted all administrative remedies as to his ADA claims. On July 18, 2025, the U.S. Equal Employment Opportunity Commission issued a **Right-to-Sue letter**

following Plaintiff's ADA complaint against IMPB and its insurer.

49. Plaintiff exhausted administrative remedies under the Texas workers' compensation system. On September 17, 2025, the Division of Workers' Compensation Appeals Panel issued a "No Decision" on Plaintiff's appeal, rendering the Administrative Law Judge's July 30, 2025 decision final for judicial review purposes.

50. Plaintiff has also exhausted internal and external complaint processes with **TDI-DWC** and **OIEC**, including formal ADA accommodation requests, program-performance complaints, fraud complaints, and appeals to oversight bodies such as the Texas Attorney General, U.S. DOJ, and the FBI. No corrective action was taken.

---

## VI. CAUSES OF ACTION

## A. COUNT I — VIOLATION OF ADA TITLE I (Employment Discrimination & Retaliation)

51. Plaintiff incorporates by reference paragraphs 1–50 as if fully set forth herein.

52. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the ADA.

53. IMPB was a covered employer under 42 U.S.C. § 12111(5)(A), employing at least 15 individuals during the relevant period.

54. Plaintiff could perform the essential functions of his job with reasonable accommodation.

55. IMPB and Acuff failed to provide reasonable accommodations and instead required Plaintiff to work under conditions that aggravated his injury.

56. IMPB and Acuff imposed a **"100% healed"** requirement and refused to allow continued light duty, which constitutes unlawful denial of accommodation under ADA Title I.

57. IMPB and Acuff terminated Plaintiff on May 8, 2024, citing his absence as a "burden on the company." The termination was pretextual and retaliatory.

58. Defendants' conduct violated ADA Title I, 42 U.S.C. § 12112(a), (b)(5)(A), and § 12203(a).

59. As a direct and proximate result, Plaintiff suffered loss of wages, benefits, medical care, emotional distress, and other damages.

## B. COUNT II — VIOLATION OF ADA TITLE II (Public Services)

60. Plaintiff incorporates paragraphs 1–59.

61. TDI-DWC and OIEC are public entities under 42 U.S.C. § 12131(1).

62. Defendants Brown, LaBruyere, Uptmore, Croslen, Daniel, Hernandez, Johnson, and Alaquinez acted under color of state law.

63. TDI-DWC and OIEC failed to provide Plaintiff with meaningful access to their services and failed to accommodate Plaintiff's disabilities in administrative proceedings.

64. Plaintiff requested accommodations repeatedly, including record access, communication modifications, and procedural assistance. These were denied or ignored.

65. As a direct result, Plaintiff was deprived of meaningful participation in the workers' compensation process, which impaired his ability to appeal or seek benefits.

66. Defendants' actions violated 42 U.S.C. § 12132 and implementing regulations at 28 C.F.R. Part 35.

## C. COUNT III — VIOLATION OF ADA TITLE V (Retaliation & Interference)

67. Plaintiff incorporates paragraphs 1–66.

68. Plaintiff engaged in protected activity by requesting accommodations and filing complaints.

69. Defendants engaged in retaliatory actions, including ignoring accommodation requests, obstructing administrative review, and using procedural devices to silence or neutralize Plaintiff's claims.

70. Defendants' conduct interfered with Plaintiff's exercise of rights under the ADA and violated 42 U.S.C. § 12203(a)–(b).

71. Plaintiff suffered further harm as a direct and proximate result of this retaliation.

## D. COUNT IV — VIOLATION OF 42 U.S.C. § 1983 (Fourteenth Amendment)

72. Plaintiff incorporates paragraphs 1–71.

73. State Defendants acted under color of state law.

74. Plaintiff has a protected property and liberty interest in workers' compensation benefits, procedural due process, and access to public services.

75. Defendants deprived Plaintiff of these rights through arbitrary and capricious actions, denial of access, failure to investigate, and failure to accommodate.

76. Defendants' acts and omissions violated the Fourteenth Amendment's Due Process and Equal Protection Clauses.

77. Plaintiff is entitled to compensatory and punitive damages and injunctive relief.

---

E. COUNT V — RICO, 18 U.S.C. §§ 1961–1964

78. Plaintiff incorporates paragraphs 1–77.

79. Defendants IMPB, Acuff, Ward, Farmers, Kraft, Allison, and various agency officials constituted an **"enterprise"** within the meaning of 18 U.S.C. § 1961(4).

80. The enterprise engaged in a pattern of racketeering activity, including **mail fraud** (18 U.S.C. § 1341), **wire fraud** (18 U.S.C. § 1343), and obstruction of justice.

81. Predicate acts include but are not limited to:
   (a) issuance of false and conflicting PLN-11 notices;
   (b) alteration or suppression of DWC-73 work status reports;
   (c) coordinated suppression of ADA accommodation requests;
   (d) concealment of statutory waiver by the insurer;
   (e) use of administrative inaction to perpetuate benefit denial.

82. The racketeering activity affected interstate commerce through insurance and legal services.

83. Defendants conducted and participated in the enterprise through this pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

84. Defendants conspired to do so in violation of § 1962(d).

85. Plaintiff suffered injury to property (lost benefits, wages) and business (employment) by reason of this violation.

86. Plaintiff seeks treble damages, attorneys' fees, and costs under 18 U.S.C. § 1964(c).

F. COUNT VI — VIOLATION OF 42 U.S.C. § 1985(3)
(Civil Rights Conspiracy)

87. Plaintiff incorporates paragraphs 1–86 as if fully restated herein.

88. Defendants IMPB, Acuff, Ward, Farmers Insurance, Kraft, Allison, and the named state officials conspired to deprive Plaintiff of his constitutional and statutory rights, including equal protection, due process, and ADA protections.

89. The object of the conspiracy was to suppress Plaintiff's claim, neutralize his ADA rights, and protect the employer–insurer relationship by misusing state administrative processes.

90. Overt acts in furtherance of the conspiracy include:
(a) altering medical forms (DWC-73) to minimize injury severity;
(b) filing conflicting and untimely PLN-11 denials;
(c) coordinating between opposing counsel and Plaintiff's own attorney to limit appeal rights;
(d) ignoring ADA accommodation requests and procedural complaints; and
(e) manipulating or withholding administrative records.

91. The conspiracy was motivated, at least in part, by class-based discriminatory animus against disabled individuals — specifically, Plaintiff's physical and psychological impairments.

92. The acts described herein deprived Plaintiff of the equal protection of the laws in violation of 42 U.S.C. § 1985(3).

93. Plaintiff suffered compensatory damages, emotional distress, and loss of statutory rights as a direct and proximate result.

---

## G. COUNT VII — DECLARATORY AND INJUNCTIVE RELIEF
(28 U.S.C. §§ 2201–2202)

94. Plaintiff incorporates paragraphs 1–93.

95. A real and substantial controversy exists between Plaintiff and Defendants concerning the legality of Defendants' conduct.

96. Declaratory relief is appropriate to determine the rights and obligations of the parties and to clarify that Defendants' actions violated Plaintiff's rights under the ADA, §1983, §1985(3), and RICO.

97. Injunctive relief is necessary to:
(a) prevent ongoing retaliation and procedural obstruction;
(b) compel Defendants to produce and correct administrative records;
(c) restore Plaintiff's ability to pursue benefits lawfully; and
(d) require agencies to adopt ADA-compliant procedures and oversight mechanisms.

98. Plaintiff has no adequate remedy at law, as monetary damages alone cannot ensure future compliance or restore equal access to administrative processes.

99. The balance of equities favors granting injunctive relief, and such relief serves the public interest by reinforcing ADA and constitutional compliance in Texas's workers' compensation system.

---

## H. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Enter judgment in his favor on all counts;

2. Declare that Defendants violated Plaintiff's rights under the ADA, 42 U.S.C. §§ 1983 and 1985(3), and 18 U.S.C. §§ 1961–1964;

3. Issue injunctive relief directing:
   a. cessation of all retaliatory and discriminatory conduct;
   b. correction and release of Plaintiff's full administrative records;
   c. restoration of statutory benefits wrongfully denied; and
   d. implementation of ADA-compliant procedures at TDI–DWC and OIEC;

4. Award compensatory and punitive damages against all individual and private Defendants jointly and severally;

5. Award treble damages under RICO (18 U.S.C. § 1964(c));

6. Award costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b) and § 12205; and

7. Grant such other relief as the Court deems just and proper.

---

## I. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

---

**Respectfully submitted,**

/s/ **William Christopher Nickels**
205 Warner Bend

Hutto, Texas 78634
Email: william.c.nickels@gmail.com
Phone: (512) 876-9553

**Pro Se Plaintiff**
Dated: _____